IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUNLIGHT OF THE SPIRIT HOUSE, et al., : : Plaintiffs, : : v. : : BOROUGH OF NORTH WALES, : PENNSYLVANIA, et al., : Defendants. : | CIVIL ACTION No. 16-909 |

Goldberg, J.                                                                                                            January 20, 2017

**MEMORANDUM OPINION**

This case arises out of the Zoning Hearing Board of North Wales ("Zoning Board")'s denial of the application of Plaintiffs, Matthew Bartelt ("Bartelt") and Sunlight of the Spirit House, Inc. ("Sunlight"), for a special exception and a reasonable accommodation to the Borough's zoning code. Sunlight had requested permission to operate a recovery house for up to ten recovering alcoholics and substance abusers in a property owned by Bartelt. Plaintiffs bring claims against the Borough of North Wales, Pennsylvania ("North Wales") and its Zoning Board asserting that the denial of the application was a violation of the Fair Housing Act, 42 U.S.C. § 3601, et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12201, et seq.

Before me is Defendants' motion to dismiss. For the following reasons, I will deny the motion.

**I.    FACTUAL AND PROCEDURAL HISTORY**

The following facts, taken from the complaint and viewed in the light most favorable to Plaintiffs, are as follows:

1

In May 2015, Bartelt purchased a five-bedroom single family house in North Wales with the intention of using it as a residence for up to ten recovering alcoholics and substance abusers. He then leased the house to Sunlight, a not-for-profit corporation that he is affiliated with, so that Sunlight would run the recovery house. Sunlight's stated mission is "to provide housing for recovering alcoholics and substance abusers that helps establish a foundation for purposeful long term sobriety." (Compl. ¶¶ 15, 26, 29.)

When Bartelt bought the property, he did not have an understanding of the limitations that the North Wales zoning code would place on the operation of the recovery house. Under the zoning code, the house is "located in a residential area that is zoned R-C Residential, which permits single-family and two-family residential use as a permitted, principle use." The zoning code's definition of "family" encompasses those "related by blood, marriage or adoption," and also extends to "functional family equivalents," defined as "[unrelated] [p]ersons living and cooking together as a single, nonprofit and non-transient housekeeping unit and having facilities to do their cooking on the premises." The number of unrelated persons that are allowed to live in a house as a functional family equivalent is limited to three. The Zoning Board may, however, "grant a special exception [to increase the number of residents] after ascertaining that the dwelling unit has adequate off-street parking facilities, living space, indoor plumbing, and operating as a single, nonprofit and non-transient housekeeping unit and facilities to do their cooking on the premises which constitute a functional family equivalent and complying with the requirements of the Uniform Construction Code." (Id. ¶¶ 29-30, 34-36.)

On May 28, 2015, North Wales issued Plaintiffs a certificate of occupancy for up to three unrelated persons. In June 2015, Plaintiffs applied for a special exception to the zoning code to permit up to ten individuals to live in the recovery house, and to provide a reasonable

accommodation based on the residents being recovering alcoholics and substance abusers. The Zoning Board then held two public hearings on the special exception application, but did not address the request for a reasonable accommodation. (Id. ¶¶ 31, 38-39, 59, 61.)

The first hearing was held on September 1, 2015. Bartelt "testified that one of the purposes of [Sunlight] was to provide a housing program where those residents who just completed [residential substance abuse] treatment would have the opportunity to live with others who are striving to achieve long-term sobriety." He stated "that the benefits of living at [Sunlight] is that the residents were not around [] activities or places that would trigger a relapse." Bartelt explained that although Sunlight would not be providing substance abuse treatment or counseling, it would impose structure and rules, including a curfew and a requirement that residents participate in outpatient treatment. Bartelt stated that a typical tenant could stay at the recovery house for up to a year, as long as they followed the rules and regulations, and that the expected stay of a tenant would be nine months. In addition, Bartelt "agreed to limit the number of cars for residents to two." (Id. ¶¶ 40-45, 48.)

The second hearing was held a little over a month later on October 6, 2015. Several neighbors and objectors spoke in opposition to Sunlight's application. They expressed concerns that allowing up to ten people to reside at the recovery house would compromise their children's safety and their property values. The next-door neighbor described the recovery house as a "revolving door of potential residents who didn't make the cut." One objector stated "I think it's great what you guys are doing. I just don't want it in the neighborhood." Those in attendance also questioned how Sunlight would govern its finances, and whether Sunlight indeed was a non-profit. (Id. ¶¶ 51-57.)

The Zoning Board denied the application for a special exception to the zoning code. It found that Plaintiffs failed to meet their burden establishing that the Sunlight recovery house had adequate off-street parking facilities, was operating as a non-transient and non-profit housekeeping unit, and that the allowance of a special use exception would be in the public interest. Having credited the objections and testimony of neighbors and objectors, the Zoning Board specifically found that the proposed use was not compatible with the residential neighborhood, would be injurious to the public health, safety and welfare of the community, and would cause undue congestion of vehicular traffic. On or about January 26, 2016, the North Wales zoning officer issued a cease and desist order to Bartelt which informed him that no more than three residents were permitted to live in the house. (Id. ¶¶ 60-65, 67.)

As noted above, Plaintiffs Bartelt and Sunlight have brought two claims alleging that Defendants' refusal to grant permission to increase the number of residents from three to ten was a violation of both the Fair Housing Act ("FHA") (Count I) and the American with Disabilities Act ("ADA") (Count II). Defendants have filed a motion to dismiss.

## II.     STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. To determine the sufficiency of a complaint under Twombly and Iqbal, the Court must take the following three steps: (1) the Court must "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the

4

assumption of truth"; and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

### III. LEGAL ANALYSIS

The FHA prohibits discrimination in the sale or rental of housing on the basis of race, color, religion, sex, disability,[1] familial status, or national origin.  42 U.S.C § 3604.  Among those considered to have a disability under the FHA are recovering alcoholics and substance abusers.  Regional Economic Community Action Program, Inc. v. City of Middletown, 294 F.3d 35, 46 (2d Cir. 2002).  Because Plaintiffs seek to provide housing to recovering alcoholics and substance abusers, they are protected by the provisions of the FHA that apply to disabled individuals.

Plaintiffs' complaint generally alleges that Defendants violated the FHA by "discriminating in the terms, conditions, or privileges of sale or rental of a dwelling [] because of the status of the [Sunlight] residents as recovering alcoholics and substance abusers."  (Compl. ¶ 80.)  The complaint specifically claims that the Zoning Board, in denying the special exception application to allow up to ten recovering alcoholics and substance abusers to reside in the Sunlight recovery house, intentionally discriminated against them on the basis of the residents' disability.  (Id. ¶¶ 79, 81, 85.)  To prevail on an intentional discrimination claim under the FHA, a plaintiff need show only that the disability was a "motivating factor" in the adverse decision.

---

[1] Although the FHA uses the term "handicap," I will use the term "disability" throughout this opinion for sake of consistency with my analysis of Plaintiffs' ADA claim.  There is no substantive difference between the two terms.  See McKivitz v. Township of Stowe, 769 F.Supp.2d 803, 821 (W.D. Pa. 2010) ("Courts generally consider individuals deemed to be 'handicapped' within the meaning under the FHA to likewise be 'disabled' within the meaning of the [] ADA.").

Community Services Inc. v. Wind Gap Mun. Authority, 421 F.3d 170, 177 (3d Cir. 2005). Plaintiffs need not prove that the individual members of the Zoning Board were biased themselves. Innovative Health Sys., Inc. v. City of White Plains, 117 F.3d 37, 49 (2d Cir. 1997). Rather, a plaintiff may demonstrate a violation of the FHA if he can show that "discriminatory governmental actions are taken in response to significant community bias." Tsombanidis v. City of West Haven, Conn., 129 F.Supp.2d 136, 152 (D. Conn. 2001). This is because "a decision made in the context of strong, discriminatory opposition becomes tainted with discriminatory intent even if the decision-makers personally have no strong views on the matter." Innovative Health, 117 F.3d at 49.

In response to Defendants' motion, Plaintiffs argue that discrimination as a motivating factor in the Zoning Board's decision is evidenced by the Zoning Board having "adopted the concerns of the community in denying the special exception application." Plaintiffs contend that the community opponents' "[u]sage of words such as safety of children, property values, crime, parking, impact on the neighborhood are code words for discrimination" which, while not "explicitly refer[ring] to recovering addicts and alcoholics, [] raise issues about the nature of drug addiction and alcoholism," and that such "'code words' may demonstrate discriminatory intent." (Pls.' Resp. at 17.)

Defendants do not dispute that the Zoning Board adopted the concerns of the community in denying the special exception application. Defendants, however, characterize the Zoning Board's reasons for having denied the application as legitimate and non-discriminatory. They point out that the Zoning Board was not "required to ignore the rights of the remainder of the community to the use and enjoyment of the neighborhood by ignoring provisions of the [North Wales zoning] ordinance enacted to promote, protest and facilitate the public health, safety,

morals, general welfare, coordinated and practical community development, proper density of population and vehicle parking and loading space," and that the "interest in preserving the character of single family neighborhoods is a legitimate government interest, one that has been long recognized by both state and federal courts." Defendants emphasize that the transient nature of the recovery house residents and the inability of Plaintiffs to provide sufficient off-street parking to the increased number of residents would "frustrate the goal of Defendants in continuing to promote and protect the safety and well-being of the community." (Defs.' Br. at 8-9.)

I agree with Defendants that factors such as transience, profit status and parking availability could be legitimate reasons under the zoning code for denying a special exception application.[2] However, these are factors that are appropriate to rebut Plaintiffs' claim of intentional discrimination, and are better suited for later stages of this litigation.

The only inquiry here is whether Plaintiffs have pled enough facts to plausibly state a case of intentional discrimination, Iqbal, 129 S. Ct. at 1949, by adequately alleging that animus toward recovering alcoholics and substance abusers was a "motivating factor" in the Zoning Board's denial of the special exception application. In that regard, Plaintiffs alleged that the Zoning Board adopted the concerns of the community in the denial of its application. Viewing the facts alleged in the complaint in the light most favorable to Plaintiffs, I find that because the concerns of the community as articulated at the hearing could be construed as "code words," Plaintiffs have sufficiently alleged that animus toward recovering alcoholics and substance abusers was a "motivating factor" for the denial of its application. See Innovative Health, 117

---

[2] It is worth noting here that Plaintiffs do not challenge the propriety of the zoning code itself. Rather, they bring an "as-applied" challenge that disputes how the Zoning Board interpreted and applied the zoning code in denying their specific application.

F.3d at 49.  I will thus deny Defendants' motion to dismiss the claim of intentional discrimination under the FHA.

Defendants have also moved to dismiss Plaintiffs' claim that the Zoning Board's failure to allow up to ten people violated the reasonable accommodations provisions of the FHA and the ADA.  As for the FHA, that statute requires a municipality "to make reasonable accommodations in its generally applicable zoning ordinances when necessary to give a [disabled] person 'equal opportunity to use and enjoy a dwelling.'"  Oxford House-C v. City of St. Louis, 77 F. 3d 249, 251 (8th Cir. 1996) (quoting 42 U.S.C. § 3604 (f)(3)(B)).  The United States Court of Appeals for the Third Circuit employs "a burden-shifting analysis in which the initial burden is on the plaintiff to demonstrate that the accommodations that it requested are 'necessary to afford [disabled] persons [an] equal opportunity to use and enjoy a dwelling,' at which point the burden shifts to the defendant to show that the requested accommodations are unreasonable."  Lapid-Laurel, L.L.C. v. Zoning Board of Adjustment of the Township of Scotch Plains, 284 F.3d 442, 457 (3d Cir. 2002) (quoting 42 U.S.C. § 3604 (f)(3)(B)).  When the burden shifts to the defendant "to establish that the accommodation proffered by the applicant was not reasonable, the municipality is required to prove that it could not have granted the variance without: (1) imposing undue financial and administrative burden; (2) imposing an undue hardship upon the township; or (3) requiring a fundamental alteration in the nature in the zoning program."  Id. at 462 (internal quotations and alterations omitted).  The Third Circuit has "cautioned that this inquiry is highly fact-specific, requiring a case-by-case determination."  Id. (internal quotations omitted).

As for Plaintiff's claim under the ADA, Title II of that statute, which prohibits discrimination by public entities on the basis of disability, also applies to zoning decisions, and

8

places upon governments an affirmative duty to make accommodations in order to afford disabled persons with the same housing opportunities as the non-disabled, so long as those accommodations are reasonable and do not place an undue financial or administrative burden on the municipality or require a fundamental alteration in the nature of the program. Tsombanidis v. City of West Haven, 129 F.Supp.2d 262, 291-92 (D. Conn. 2001). Being that these requirements are essentially the same as the FHA reasonable accommodations standard, I will discuss Plaintiffs' FHA and ADA reasonable accommodations claim together.

As stated above, although Plaintiffs made a reasonable accommodations request, the Zoning Board did not address it. Defendants argue that Plaintiffs' reasonable accommodations claim should nevertheless be dismissed "given the testimony from Plaintiff Bartelt that he could not provide the required amount of off-street parking, the testimony that the operation of [Sunlight] was de facto transient in nature, [and] the testimony that Plaintiff Bartelt wanted to increase the number of residents so that he could do better financially than break even." (Defs.' Br. at 9.)

Defendants rely upon McKivitz v. Township of Stowe, 769 F.Supp.2d 803 (W.D. Pa. 2010), which involved an owner of a single-family residence whose application for variance to use a property in a residential area as a group home for recovering alcoholics and drug addicts had been denied. The court granted summary judgment because the plaintiff had "failed to satisfy [his] initial burden of showing that 'reasonable accommodations' are necessary to provide [disabled] individuals with an 'equal opportunity to use and enjoy a dwelling.'" Id. at 827 (quoting 42 U.S.C. § 3604(f)(3)(b)). In so doing, the court noted that the "[p]laintiffs have produced no evidence concerning the availability (or unavailability) of group residence in Stowe," and had thus "[failed to] establish a nexus between the proposed accommodations and

their necessity for providing handicapped individuals with an equal opportunity to live in a *specific* facility located within a *particular* residential district." Id. at 827 (emphasis in original).

McKivitz does not support the dismissal of Plaintiffs' reasonable accommodations claim. This is because the reasonable accommodations inquiry is "highly fact-specific," Lapid-Laurel, 284 F.3d at 462, and McKivitz was decided at the motion for summary judgment stage, after the parties had engaged in discovery and developed the factual record. This case is at the pleading stage, and the factual record is undeveloped. The relevant inquiry presently before me is thus confined to whether Plaintiffs have met their initial burden and adequately alleged that the potential residents of the recovery house are disabled, and that the Zoning Board's failure to consider their request for a reasonable accommodation denied them of their equal opportunity to use and enjoy a dwelling in North Wales. In this regard, Defendants agree that the potential recovery house residents are disabled for purposes of the FHA and ADA, and that Plaintiffs have indeed alleged that "[t]he effect of the conduct of the Defendants is to limit the housing opportunities of unrelated disabled persons by denying them the right to live together as a group in any residential zoning district in the Borough of North Wales." (Compl. ¶ 72) (emphasis added.) This is sufficient, at this stage in the litigation, to plausibly state a reasonable accommodations claim under both the FHA and the ADA.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **DENIED**. An appropriate Order follows.